IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FEATHER RUSSELL,**

        **Plaintiff,**

v.                                                      CIV 03-200 LAM

**JOANNE B. BARNHART**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing *(Doc. 13)* and Memorandum in Support of the motion *(Doc. 14)* filed on August 4, 2003. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion, Defendant's response to the motion and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter "R"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") **AFFIRMED**.

### I. Procedural History

      Plaintiff, Feather Russell, filed an application for Disability Insurance Benefits and Supplemental Security Income on December 28, 2000. *(R. at 72, 326.)* In connection with her application, she alleged a disability since October 31, 1999, due to fibromyalgia, chronic pain,

numbness, stiffness, weakness, fatigue, swelling, insomnia, sleep disorder, confusion, memory loss, dizziness, low blood pressure, balance disorder, palpitating heart, PMS, and bulging disk or degenerative spinal disease. *(R. at 72, 104.)* Plaintiff also claimed problems due to chronic fatigue syndrome, depression (mental fog), and mercury poisoning. *(R. at 106, 113, 116.)* Plaintiff's application was denied at the initial and reconsideration levels. *(R. at 51, 52, 53-57, 60.)*

The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on June 5, 2002. *(R. at 25-50.)* Plaintiff was represented at the hearing by a non-attorney advocate. *(R. at 25.)* On August 19, 2002, the ALJ issued his decision in which he made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 404.1520: 1) claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through the date of this decision; (2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has an impairment or combination of impairments considered "severe" (specifically, depression, anxiety, and alcohol and marijuana abuse); (4) these medically determinable impairments do not meet or medically equal one of the listed impairments; (5) claimant's allegations regarding her limitations are not totally credible; (6) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (7) claimant has the residual functional capacity to perform simple unskilled work across all exertional levels; (8) claimant is a "younger" individual; (9) claimant has more than a high school education; (10) claimant has no transferable skills from semi-skilled to skilled work previously performed; (11) claimant has no exertional limitations; (12) considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework,

the claimant is not disabled; (13) claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. *(R. at 17-18.)*

After the ALJ issued his decision on August 19, 2002, Plaintiff filed a request for review. *(R. at 7.)* On December 16, 2002, the Appeals Council issued its decision denying Plaintiff's request for review *(R. at 5.)*, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed her complaint for court review of the ALJ's decision on February 11, 2003. *(Doc. 1.)*

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health & Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)). Substantial evidence is more that a mere scintilla of evidence but less than a preponderance. *See, e.g., Sisco v. U.S. Dep't of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).

A claimant has the burden of proving his or her disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993); 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert,* 482 U.S. 137 (1987). At the first four levels of the sequential

evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulation under 20 C.F.R. Part 404, Subpart P, App.1, or he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988)  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity ("RFC"), age, education, and prior work experience.  *See Gatson v. Bowen,* 838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing, Plaintiff was forty-six years old.  *(R. at 72.)*  She completed high school and attended college.  *(R. at 12, 32.)*  During the fifteen year period prior to the ALJ's decision, Plaintiff worked as a freelance commercial artist, a tattoo artist and owned a tattoo and body piercing studio.  *(R. at 30, 90.)*  Plaintiff also had a home business raising dogs.  *(R. at 30.)*

Plaintiff's medical records indicate she complained of chronic back pain, insomnia, fatigue, and depression beginning in 1988, when she consulted a nutritionist for help with these symptoms.  *(R. at 215-216.)*  Plaintiff has consulted numerous physicians since, reporting previous diagnoses of chronic fatigue syndrome and fibromyalgia.  *(R. at 153, 161, 167.)*  Several physicians and counselors note Plaintiff does exhibit symptoms of chronic fatigue syndrome and fibromyalgia as well as depression and substance abuse.  *(R. at 151, 163, 167, 169, 191, 218, 242)*  Over the years, Plaintiff has been prescribed numerous medications to control her symptoms and alleviate her pain.  *(R. at 151, 152, 158-160, 204, 206, 218, 315.)*  These medications included analgesics, antidepressants,

muscle relaxants, and even Marinol[1] *(R. at 150-152, 158-160, 217.)*, but Plaintiff reports the medications did not relieve the symptoms and so she stopped using them. *(R. at 161, 167, 241.)* At present, Plaintiff reports daily marijuana use as self medication *(R. at 204, 211, 218, 242.)*, Effexor for depression and Serzone for sleep and anxiety. *(R. at 141.)* On February 25, 2002, Plaintiff reported to a counselor she was much better on Serzone. *(R. at 293.)* Plaintiff's medical records suggest that her depression may be organic in nature and itself a symptom of the chronic fatigue syndrome or possibly the fibromyalgia. *(R. at 163, 169, 186.)* Beginning in June of 2001, Plaintiff sought counseling for depression from a mental health clinic and continued through May of 2002. *(R. at 252, 226-260, 276-302, 316-324.)*

## IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step five of the five-part sequential analysis for determining disability.  At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity given her residual functional capacity, age, education and prior work experience. *Gatson*, 838 F.2d at 446.

Plaintiff alleges the ALJ made three errors in denying her claim for benefits.  Specifically, Plaintiff argues that the ALJ: (1) erred in finding Plaintiff's fibromyalgia is not a severe impairment; (2) erred in evaluating Plaintiff's credibility; and (3) erred because the residual functional capacity finding is not supported by substantial evidence. *(Doc. 14 at 10, 15, 19.)*

Defendant argues that the ALJ applied the correct legal standards and his decision that Plaintiff was not disabled is supported by substantial evidence.

---

[1] Marinol is the brand name for dronabinol which is an orally active cannabinoid, one of the active substances in marijuana.  Dronabinol is used to treat severe nausea and vomiting associated with cancer chemotherapy. *WebMD Health,* www.webmd.com.

### A. Plaintiff's Fibromyalgia is Not a Severe Impairment

Plaintiff alleges the ALJ erred in not finding her fibromyalgia a severe impairment at step two of the evaluation process. *(Doc. 14 at 15.)* At step two, a claimant establishes a "severe" impairment if she shows that the impairment has "more than a minimal effect" and significantly interferes with basic work activities such as walking, standing, sitting, ability to follow instructions, and use of judgment. *See* 20 C.F.R. §§ 404.1520, 404.1520a, 416.920a, 416.921. The step two evaluation is made on the basis of the condition alleged and the medical evidence alone. "[A]t step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on [her] ability to work." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

At step two, the ALJ found that the medical evidence indicates that Plaintiff has depression, anxiety, and alcohol and marijuana abuse. Although these are impairments that are severe within the meanings of the regulations, they are not of such severity as to meet or medically equal one of the listed impairments. *(R. at 13.)* The ALJ does not specifically discuss why he finds that Plaintiff's fibromyalgia is not a severe impairment; however, he does discuss the medical evidence in detail in his decision. The ALJ "notes at the outset that the claimant does not have any "severe" physical or exertional limitations." *(R. at 14.)*

Beginning with an analysis of the objective medical evidence, the ALJ notes that the consultative physical exam conducted by Dr. John C. Lund on April 9, 2001 indicates that Plaintiff's range of motion was in all respects normal. *(R. at 14, 161-165.)* Dr. Lund reported ambulation was normal without assistive devices, and there was no evidence of muscle atrophy, spasms, joint deformities, swelling or inflammation. *(Id.)* Plaintiff was able to pinch, make a fist, write, sit, stand,

bend, and squat although with complaints of severe discomfort. *(Id.)* Plaintiff did report tenderness over the trigger points bilaterally on scapulae, down the vertebral spine, and over the sacro-iliac joints. *(R. at 163.)* From this information, Dr. Lund concluded that Plaintiff "is presently unable to do any work related activities that require constant sitting or standing." *(R. at 163.)* Upon review of Dr. Lund's report, the ALJ concludes there is no support for any exertional limitations other than claimant's subjective complaints and dismisses Dr. Lund's opinion as inconsistent with the physical evidence. *(R. at 14, 163.)* Dr. Lund saw Plaintiff only once, for this consultative exam. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (physician's opinion properly disregarded because his examination did not support his restrictive assessment, was based on brief treating relationship, and his opinion was inconsistent with findings of other physicians). The ALJ also dismisses the DDS[2] evaluation by a non-examining agency physician (which was based on Dr. Lund's examination and finding that the Plaintiff's limitations restrict her to light work) due to lack of objective medical evidence. *(R. at 14, 193-200.)*

The ALJ's finding that there is insufficient objective medical evidence to support the establishment of a pain-producing impairment is not inconsistent with Plaintiff's medical records, looking at them in their entirety. Plaintiff's treating physicians[3] accept her reports of having been previously diagnosed with CFS and fibromyalgia and treat her accordingly. *(R. at 153, 161, 166,*

---

[2]Disability Determination Services ("DDS") is the state agency the Social Security Administration has contracted with to develop the medical record in Social Security claims at the initial and reconsideration levels. *See* 20 C.F.R. § 404.1519s.

[3]The Court views Dr. Terri Horan and Dr. Charles Anderson as Plaintiff's treating physicians as they are the only physicians that Plaintiff consulted more than once or twice. *(R. at 150-153, 158-160.)* The record indicates that Plaintiff consulted Dr. Horan five times from March, 1999 to September, 1999 *(R. at 150-153.)*, and Dr. Anderson approximately nine times from December, 1998 to September, 1999 (often to request refills of Marinol). *(R. at 158-160.)*

*218.)* However, the references in the medical records are insufficient to establish a definitive diagnosis of this disease based upon acceptable clinical observations, such as trigger points, or to establish any related functional limitations.  As best the Court can decipher the handwriting, Rheumatologist Dr. Terri Horan notes there "is a ? FMS dg,"[4] (a questionable fibromyalgia syndrome diagnosis). *(R. at 153.)* Following a psychiatric evaluation, Dr. Jaime Michel indicates there is a need to "rule out" CFS and fibromyalgia as the possible organic bases for Plaintiff's depression. *(R. at 169.)* In June of 2001, Plaintiff reports to Dr. Katy Hoeft she has fibromyalgia and CFS as diagnosed by a rheumatologist in Texas, but requests an antidepressant and not pain medications. *(R. at 218.)* Based on Plaintiff's complaints and subjective reports of pain, she is prescribed pain medications by various doctors, but does not continue them *( R. at 32, 151, 161,166, 167.)*, and admits to self-medication with marijuana. *(R. at 167, 172, 218.)*  An ALJ may properly consider what attempts Plaintiff made to relieve her pain, in an effort to evaluate the veracity of Plaintiff's claims that her pain is so severe as to be disabling. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

It is within the ALJ's authority to reject physician's opinions which are unsupported by the objective evidence of record. *See Castellano v. Secretary of Health & Human Serv.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  The ALJ, not the physician, is responsible for examining medical source opinions and making the determination on whether the claimant meets the statutory definition of disability. *See* 20 C.F.R. § 404.1527(e)(1).  The objective medical evidence in the entire record and

---

[4]Dr Horan uses the abbreviation FMS and the Court assumes this stands for fibromyalgia syndrome. Fibromyalgia is a syndrome of chronic pain of musculoskeletal origin but uncertain cause.  Diagnostic criteria include pain on both sides of the body, both above and below the waist, as well as in an axial distribution; additionally there must be point tenderness in at least 11 of 18 specified sites. *Steadman's Medical Dictionary*, 671 (27th ed., Lippincott Williams & Wilkins 2000).

in Dr. Lund's consultative exam are not consistent with Dr. Lund's restrictive assessment and, therefore, the ALJ did not err in rejecting Dr. Lund's opinion.

The ALJ continues the analysis, taking note of Plaintiff's own account of her daily activities including cleaning, shopping, and cooking, albeit in a restricted manner.  *(R. at 15-16, 39-41.)*  Plaintiff also reports that she drives, walks daily and hitch-hikes.  *(R. at 30, 204, 218)*  And when questioned by a counselor at the mental health clinic, Plaintiff denies any problems in her daily living activities.  *(R. at 244.)*

The ALJ also notes that Dr. Jaime Michel's assessment of Plaintiff's depression (a potential component of fibromyalgia), caused (1) only mild limitations in her ability to interact with the public, co-workers, and supervisors; (2) only mild limitations in her ability to carry out instructions, attend and concentrate, work without supervision and to remember and understand detailed, complex, and simple instructions; and (3) only mild limitations in her ability to adapt to changes in the workplace and to be aware of normal hazards and react appropriately.  *(R. at 15, 171-173.)*  The Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form completed by an agency physician are consistent with Dr. Michel's findings that Plaintiff exhibits only mild to moderate functional limitations.  *(R. at 174-188, 189-192.)*  The Court finds that the ALJ considered the objective medical evidence and Plaintiff's own testimony and provided legitimate reasons to conclude Plaintiff does not exhibit fibromyalgia with the requisite severity to establish a severe impairment.

## B.  Credibility Determination

Plaintiff argues that the ALJ erred in finding that Plaintiff's allegations regarding her limitations are not totally credible. *(Doc. 14 at 10.)* The ALJ determined that the Plaintiff's testimony and reports of pain and functional restrictions are not supported by the overall evidence to the disabling degree alleged. (*R. at 17.*) Therefore, the ALJ found that the "claimant's allegations regarding her limitations are not totally credible." *(R. at 17.)* Objective medical evidence must establish an impairment that could reasonably be expected to produce the alleged pain and statements regarding the intensity and persistence of symptoms must be reasonably consistent with the medical findings and signs. *Gatson*, 838 F.2d at 447. It is also well-established that subjective testimony alone cannot establish a finding of disability. (*Id.*) When determining the credibility of pain testimony, the ALJ should consider factors such as the levels of medication and their effectiveness, the extensiveness of attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility, the motivation of and relationship between Plaintiff and other witnesses, and the consistency or compatibility of non-medical testimony with the objective medical record. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Under *Luna v. Bowen*, an ALJ must determine whether a claimant's subjective complaints of pain are credible, considering such factors as " a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . ., the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) *quoting Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987).

In this case, the ALJ set forth numerous reasons supporting his credibility assessment. Among the reasons were his own observations that "the claimant presented at the hearing as a very dramatic and histrionic individual."[5] *(R. at 16.)* The ALJ also based his decision on a review of the medical records and evaluations, Plaintiff's own testimony of her daily activities, Plaintiff's failure to keep counseling appointments, and the fact that Plaintiff failed to continue taking prescription pain medication.[6] The ALJ found these facts inconsistent with Plaintiff's claims of disabling pain. *(R. at 11-18.)* The relevant medical evidence in the record does not support Plaintiff's claim of disabling pain. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (medical records must be consistent with non-medical testimony as to severity of pain).

Plaintiff argues, in the alternative, that if objective medical evidence does not support her complaints of pain, the ALJ erred in not considering that the pain might be caused by her mental impairment of depression. *(Doc. 14 at 12, 14.)* Specifically, Plaintiff alleges the ALJ failed to consider the possibility that Plaintiff's failure to keep counseling appointments and Plaintiff's exaggeration of pain are symptoms of her depression and a failure to recognize the need for treatment. *(Id.)* However, it is clear from the ALJ's opinion that he did consider the medical records regarding Plaintiff's mental impairments, including the psychiatric evaluation of Dr. Jaime Michel *(R. at 13, 15, 166-170.)* as noted above and the assessment by Border Area Mental Health Services

---

[5] "Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

[6] An ALJ may properly consider what attempts plaintiff made to relieve her pain, in an effort to evaluate the veracity of plaintiff's claims that her pain is so severe as to be disabling. *Id.* at 1372.

("BAMHS") counselor, Nancy Gregory[7] *(R. at 13, 15, 305-314.).* Dr. Michel's contemporaneous assessment of Plaintiff's condition included a diagnosis of Depressive Disorder and Marijuana Abuse and recommended individual therapy and antidepressants, but noted that Plaintiff's "[i]nsight and judgment seem to be appropriate." *(R. at 169, 171-173.)* Dr. Michel also noted only mild functional limitations in Plaintiff's ability to do work-related activities. *(R. at 169, 171-173.)*

The ALJ did consider Plaintiff's complaints of depression and concluded "that the claimant's ability to perform simple, unskilled work at all exertional levels is not significantly compromised by her non-exertional limitations. Although the claimant would have some problems interacting with the public, she has not had a substantial loss of ability to meet any of the basic requirements of simple, unskilled work." *(R. at 16.)* Thus, the ALJ found Plaintiff's depression did impose mild to moderate functional limitations but did not reach the level of disability as defined in the Social Security Act. *(R. at 16, 17.)*

The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent,* 698 F.2d at 413. The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health and Human Serv.*, 898 F.2d 774, 777 (10th Cir. 1990). In evaluating the credibility of Plaintiff's allegations of disabling pain and depression, the ALJ considered the kinds of factors found to be appropriate in *Luna* and recited the specific evidence he relied on in considering those factors, as required by *Kepler. See*

---

[7]The ALJ notes that he gives the Nancy Gregory evaluation no significant weight because it is conclusory, not supported by objective medical evidence and because Ms. Gregory is not an acceptable medical source pursuant to 20 C.F.R. §§ 404.1513 and 416.913. *(R. at 13, 15.)*

*Luna*, 834 F.2d 161; *Kepler*, 68 F.3d 387.  The Court finds the ALJ applied the correct legal standards and his decision on this matter is supported by substantial evidence in the record.

### C.  **Plaintiff's Residual Functional Capacity Supported by Substantial Evidence**

Plaintiff alleges the ALJ erred in finding she retains an RFC to perform simple unskilled work at all exertional levels. *(Doc. 14 at 19.)*  Plaintiff argues that the ALJ's finding is contradicted by the medical evidence. *(Id.)*  Plaintiff bases her arguments on the DDS evaluation of May 2001, Dr. Lund's consultative exam and report dated April 2001 *(R. at 161-165.)*, and the treatment notes from BAMHS. *(R. at 226-260, 276-289, 290, 302, 316-324.)*  However, as noted above, the ALJ properly dismissed both the DDS evaluation and Dr. Lund's opinion because they are not supported by objective medical evidence.  Plaintiff's treating physicians do not note any physical limitations nor do they restrict Plaintiff's activities. *(R. at 150-156, 158-160.)*  The ALJ notes "at the outset that the claimant does not have any 'severe' physical or exertional limitations," because there is "absolutely no objective medical evidence supporting" such limitations. *(R. at 14.)*

When a claimant suffers from a severe mental impairment that is not severe enough to meet the requirements of a listed impairment at step three of the sequential analysis, the ALJ must assess the claimant's mental RFC.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).  The Tenth Circuit has emphasized the importance of assessing a claimant's mental RFC under these circumstances.  "When the listing requirements for mental disorder are not met, but the impairment is nonetheless severe, [t]he determination of mental [residual functional capacity] is crucial to evaluation of an individual's capacity to engage in substantial gainful work activity."  *Cruse v. U.S. Dep't. of Health & Human Services*, 49 F.3d 614, 619 (10th Cir. 1995) (alterations in original) (internal quotations omitted).  The assessment of a claimant's mental RFC "complements the functional evaluation necessary for

paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(A).

In this case, the ALJ discussed why he concluded that Plaintiff did not meet the listing requirements for § 12.04, Affective Disorders, and § 12.06, Anxiety Related Disorders. *(R. at 13.)* In doing so, he analyzed the "Part B" criteria of the listings noting that Plaintiff's activities of daily living were, at most, moderately limited, that Plaintiff had, at most, moderate limitations in her abilities to maintain social functioning and to maintain concentration, persistence, or pace pursuant to Parts B2 and B3, and that Plaintiff had not experienced any repeated episodes of decompensation, each of extended duration.[8] *(R. at 13.)* However, this analysis of the "Part B" criteria is not the equivalent of a mental RFC assessment. *Social Security Ruling 96-8p*, 1996 W.L. 374184 at *4. The ALJ must assess a claimant's mental RFC in accordance with 20 C.F.R. §§ 404.1545(c) and 416.945(c) which require the ALJ to determine if the claimant has a limited ability to carry out certain mental activities in the workplace such as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404.1545(c); 416.945(c).

In this case, the ALJ discussed how he analyzed the "Part B" criteria to determine if Plaintiff had a listed impairment. *(R. at 13.)* He then discussed how Plaintiff's mental limitations affected her ability to do work-related activities, relying on the psychiatric-psychological functional capacities evaluation by Dr. Jaime Michel signed May 5, 2001. *(R. at 13, 166-173.)* Dr. Michel's evaluation

---

[8]This information is included in the Psychiatric Review Technique form ("PRT") in the record. *(R. at 174-188.)* The PRT is a standard document that tracks the listing requirements and evaluates Plaintiff under Part A and B criteria. In this case, the PRT was completed by an agency physician on April 27, 2001 and affirmed by an agency consultant on September 24, 2001. *(Id.)*

concluded that Plaintiff had only mild limitations in her ability to interact with the public, co-workers, and supervisors; only mild limitations in her abilities to carry out instructions, attend and concentrate and work without supervision as well as to understand and remember detailed, complex and simple instructions; mild limitations on her ability to adapt to changes in the workplace and to be aware of normal hazards and react appropriately; and no limitations in her ability to use transportation or travel to unfamiliar places. *(R. at 15, 171-173.)*

The ALJ notes that Dr. Michel found the Plaintiff had a Global Assessment of Functioning ("GAF") score of only 45. *(R. at 15, 169.)* The ALJ attributes the low GAF score to Plaintiff's abuse of marijuana and alcohol, but Dr. Michel lists depressive disorder, possible medical conditions (CFS and fibromyalgia), and severe psychosocial stressors (unemployment and psychosocial isolation) as contributing factors along with marijuana abuse. *(R. at 169.)* A GAF score is a measurement of the clinician's judgment of an individual's psychological, social, and occupational functioning. *(DSM-IV-TR at 32.)* A GAF score within the range of 41-50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. *(Id. at 34.)* However, the Tenth Circuit held that

> "a GAF score of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work. As the ALJ noted, none of the therapists who rated claimant's GAF indicated that she could not work or that her problems interfered with her ability to keep a job. Thus, the ALJ did not improperly ignore relevant evidence from claimant's treating therapists."

*Seymore v. Apfel*, 131 F.3d 152, 1997 WL 755386, *2 (10th Cir. 1997) (unpublished opinion). Even with the GAF score of 45, Dr. Michel concluded Plaintiff had only mild limitations in her ability to do work-related activities. *(R. at 171-173.)* The ALJ notes that Dr. Michel also finds Plaintiff's insight

15

and judgment, long-term and short-term memories are intact and there is no evidence of psychotic thinking. *(R. at 15, 168-169.)*

The ALJ considers the treatment notes from BAMHS records, but specifically dismisses the evaluation of Nancy Gregory, as noted above, because it is brief, conclusory, unsupported by medical evidence and Ms. Gregory is not an acceptable medical source. *(R. at 13, 15.)* The ALJ reviews Plaintiff's visits and the progress notes of various counselors at BAMHS from June of 2001 through May of 2002, noting that often Plaintiff exhibits a "normal mood with normal affect" *(R. at 14, 300.)*, or is "in a good mood and had a normal affect" *(R. at 15, 229.)*, or is "depressed but had a normal affect" and no psychosis *(R. at 14-15, 230.)*

Although the ALJ gives the Plaintiff the benefit of the doubt by finding she cannot return to her past relevant work, he concludes that the Plaintiff's "ability to perform simple, unskilled work at all exertional levels is not significantly compromised by her non-exertional limitations. Although the claimant would have some problems interacting with the public, she had not had a substantial loss of ability to meet any of the basic requirements of simple, unskilled work." (R. at 16.) The Court finds the ALJ's decision that the Plaintiff retains the RFC to perform simple unskilled work across all exertional levels is supported by substantial evidence.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 13* ) is **DENIED**. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**